UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 12-141** |
| **MYRON SAUNDERS** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court is Defendant Myron Saunders's ("Defendant") objections to the Final Presentence Investigation Report ("PSR"),[1] wherein Defendant asserts that his total offense level (including the multi-count adjustment) and guideline range as computed in the Final PSR is incorrect. Specifically, Defendant objects to the application of the "abduction" enhancement under USSG § 2B3.1(b)(4)(A) which increases the base offense level by 4 points, and application of the possession of a dangerous weapon enhancement under USSG § 2B3.1(b)(2)(E) which increases the base level offense by 3 points. After considering the objections, the Final PSR, the record, the arguments made before the Court on January 30, 2014, the Court's perception and observation of the events at trial, and the applicable law, the Court will overrule the objections.

### I. Background

*A. Factual Background*

An indictment, and subsequently a superseding bill of information, were filed against Defendant and his co-defendant Lamar Nero, charging them with six separate counts: Count 1—conspiracy to commit bank robbery; Count 2—bank robbery of Chase Bank on or about June 24, 2011; Count 3—using or carrying a firearm during and in relation to a crime of violence; Count 4—bank robbery of Fidelity Bank on or about November 5, 2011; Count 5— attempted bank

---

[1] Rec. Doc. 175.

robbery of Regions Bank on or about December 10, 2011; and Count 6—attempted bank robbery of Chase Bank on or about December 24, 2011.[2] Voir dire commenced on June 24, 2013. The Government began presenting its case-in-chief on June 25, 2013.[3] After introducing evidence and calling witnesses, the Government rested its case on July 1, 2013. Although they cross-examined the Government's witnesses, neither Nero nor Saunders introduced any evidence or called any witnesses in their defense (which was fully within their rights to do and from which the Court makes no inference), and the defendants rested shortly after the United States concluded its case.

The jury returned that evening, on July 1, 2013, with a unanimous verdict on all six counts. The jury found Defendants guilty of Counts 1–4 and 6.[4] However, the jury found Defendants not guilty with respect to Count 5, which charged Nero and Saunders with attempted bank robbery of Regions Bank on or about December 10, 2011.[5]

***B. Procedural Background***

Defendant submitted objections to the draft PSR directly to the Probation Office within the required 14 days after the initial disclosure of the PSR.[6] The Probation Office revised the PSR in accordance with several of Defendant's objections. However, the Probation Office did not revise the PSR in accordance with Defendant's objections to the abduction and dangerous weapon

---

[2] *See* Rec. Doc. 8 (indictment); *see also* Rec. Doc. 78 (superseding bill of information).

[3] *Id.* at 21.

[4] Rec. Doc. 134-3 (verdict form). Additionally, the jury found Saunders and Nero guilty of assaulting or putting in jeopardy the life of another person by use of a firearm in committing the offense in Count 2. *See id.* at 2.

[5] *See id.* at 3.

[6] Rec. Doc. 164.

2

enhancements but filed replies to these objections.[7] These replies were placed with the objections in an addendum to the PSR.[8] The Court heard oral argument on these two objections during Defendant's sentencing hearing on January 30, 2014.

## II. Parties' Arguments

### A. Defendant's Objection to the Abduction Enhancement

#### 1. Defendant's Argument

Defendant objects to Paragraphs 54 and 63 of the Final PSR which recommend a four level enhancement because a person was abducted to facilitate the commission of the offenses on June 24, 2011 and Novembeer 5, 2011.[9] Defendant asserts that the evidence presented at trial does not support "abduction."[10] Moreover, Defendant maintains that he contested at trial that he was bank robber #2 and that there is no evidence that bank robber #2 had any contact with the teller alleged to have been abducted.[11] Defendant also cites Webster's Desk Dictionary's definition of abduction.[12] Defendant maintains that there was no attempt to carry off any of the tellers, which is the common understanding of an abduction.[13]

---

[7] Rec. Doc. 175

[8] *Id.*

[9] *Id.* at 27.

[10] *Id.*

[11] *Id.* 27–28.

[12] *Id.* at 28.

[13] *Id.*

Referring to Fifth Circuit precedent, Defendant argued that *United States v. Hawkins*,[14] supports his argument that there was no abduction in the instant case.[15] In *Hawkins*, the defendant beat the victims at one location of the parking lot and then dragged them 40 or 50 yards.[16] While the Fifth Circuit did note that a "different location" for purposes of determining whether there was an "abduction" does not require the crossing of a property line or threshold, Defendant argues that the egregious facts and beating that occurred weighed into the Fifth Circuit's decision to uphold the application of the enhancement in that case.[17] Similarly, Defendant finds support for his "abduction-plus" theory in *United States v. Hickman*.[18] In *Hickman*, the victims were accosted in the parking lot and then forced back into the restaurant where the robberies occurred.[19]

Defendant asserts that these cases are clearly distinguishable from the case at hand.[20] Here, according to Defendant, the tellers were heading into the bank to go to work and the robbers went with them into the bank.[21] Unlike in *Hawkins* or *Hickman*, Defendant argues that there was no beating or dragging or even touching of the tellers that would warrant an application of the abduction element.[22]

---

[14] 87 F.3d 722 (5th Cir. 1996).

[15] Rec. Doc. 175 at 48.

[16] *Id.*

[17] *Id.*

[18] 151 F.3d 446 (5th Cir. 1998).

[19] Rec. Doc. 175 at 48.

[20] *Id.* at 49.

[21] *Id.*

[22] *Id.* at 28.

**2. Government's Response**

The Government argues that under USSG Sec. 1B1.1, comment. (n.1(I)), abduction is defined as when "a victim was forced to accompany an offender to a different location."[23] In explaining what movement means, the Government cites two Fifth Circuit cases, *United States v. Johnson*[24] and *United States v. Hickman*,[25] which was also cited by Defendant. According to the Government, in *United States v. Johnson*, the Court ruled that forced movement within a single building constitutes abduction under the enhancement's definition.[26] The Government asserts that the facts of *Johnson* mirror those here "in that the Defendants used the threat of violence and/or physical intimidation to usher the bank tellers into the bank."[27] Likewise, the Government argues that in *United States v. Hickman*, the court concluded that even limited movement of the victims supports application of the abduction enhancement.[28] Thus, the Government argues, in *Hickman* it was sufficient for the enhancement that a robber accosted store employees in the parking lot and then forced them back inside the building.[29]

Applying this standard to the facts of this case, the Government argues that the enhancement is warranted because Defendants prevented the victims from leaving the bank.[30] In each of the two

---

[23] Rec. Doc. 184 at 4.

[24] 619 F.3d 469 (2010).

[25] 151 F.3d 446 (1998).

[26] Rec. Doc. 184 at 4.

[27] *Id.* at 4–5.

[28] *Id.* at 4.

[29] *Id.*

[30] *Id.* at 6.

robberies at issue, one of the robbers made contact with one of the tellers outside of the bank and either commanded the teller to enter the bank with him or to have the other teller let them inside.[31] During the robbery of June 24, 2011, one of the robbers walked up behind the second teller as she approached the bank. The robber then told the second teller to "relax no one is going to get hurt, tell her to open the door." The robber then said, "She isn't going to open the door." Consequently, the second teller began to knock louder. After some time, the first teller opened the bank door and the second teller entered the bank, along with the two robbers.

In the robbery of November 5, 2011, a teller was walking towards the bank when she observed one of the Defendant's quickly approaching. The teller began to run away from the bank but the Defendant quickly caught up to her and told her to open the door. According to the Government, the video footage also shows that as the teller stood with one of the Defendants at the bank door, she hesitated to enter. The Government claims that this Defendant forced the teller inside the bank. Based on the above evidence, the Government maintains that the enhancement is warranted.

## *B. Defendant's Objection to the Dangerous Weapon Enhancement*

### **1. Defendant's Argument**

Defendant also objects to paragraph 62 of the Final PSR which recommends a three level enhancement because a dangerous weapon was possessed. Defendant asserts that no facts elicited at trial support the dangerous weapon enhancement.[32] Specifically, Defendant argues that this enhancement is not applicable because the witnesses to the robbery in question never stated that they

---

[31] *Id.* at 6.

[32] Rec. Doc. 175 at 29.

saw a dangerous weapon.[33] In fact, Defendant points to one teller's statement that she did not see a gun.[34] Thus, according to Defendant, there is no basis for application of this enhancement.[35]

### 2. Government's Response

In reply, the Government points to USSG Sec. 1B1.1, comment. (n.1(D)(II)), which defines possession of a dangerous weapon as using any object in a manner that creates the impression that the object is a dangerous weapon.[36] The Government specifically points to the Comment's example of a defendant wrapping a hand in a towel during a bank robbery to create the appearance of a gun.[37] Furthermore, the Government cites to USSG Sec 2B3.1(b)(2)(E) Comment. (n.2).[38] This Comment provides that an object shall be considered to be a dangerous weapon if the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury.[39]

According to the Government, video surveillance from the bank shows that after seeing one of the defendants approaching her from a parked van, one of the tellers began to run from the bank. This defendant approached and ordered her back to the bank, flashing a concealed weapon on his person.[40] Later, as this teller stood at the bank's door with the defendant, the Government contends

---

[33] *Id.* at 49.

[34] *Id.*

[35] *Id.*

[36] Rec. Doc. 184 at 7.

[37] *Id*.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 8.

7

that she resisted entering the bank.[41] Only after a brief struggle with the defendant, did the teller enter the bank.[42] During this struggle, the Government argues that the video appears to depict the man to have a concealed object on his person.[43] Thus, based on the Record, the Government maintains that the dangerous weapon enhancement is warranted.

### III. Law and Analysis

*A. Abduction Enhancement Under USSG Sec. 2B3.1(b)(4)(A)*

**1. Applicable Law**

The Comment to USSG Sec. 1B1.1 provides that an abduction has occurred when "a victim was forced to accompany an offender to a different location."[44] The Fifth Circuit has been clear that a different location for purposes of determining whether there was an abduction does not require the crossing of a property line or threshold; in fact, forced movement within the same building constitutes an abduction for the purposes of USSG Sec. 2B3.1.1.[45]

Importantly, nothing in the Sentencing Guidelines or case law requires that the forced movement be accompanied by violence. While the Fifth Circuit up to now has only addressed cases where the defendants moved victims by means of violence,[46] nothing in those opinions or the

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] USSG Sec. 1B1.1, comment. (n.1(I)).

[45] *United States v. Johnson*, 619 F.3d 469 (5th Cir. 2010); *see also United States v. Hickman*, 151 F.3d 446 (5th Cir. 1998) (moving victims from parking lot into building constituted abduction); *United States v. Hawkins*, 87 F.3d 722 (5th Cir. 1996) (moving victims 40 or 50 yards at gunpoint constituted abduction).

[46] The Court specifically rejects the Government's argument that "[t]he facts of this case mirror the jurisprudence [of *Johnson*] in that the Defendants used the threat of violence and/or physical intimidation." Rec. Doc. 184 at 4. To the contrary, the defendant in *Johnson* took a teller hostage as police closed in, grabbed her by the throat and held a knife to her, pushed her forward as he moved out of the bank, and ordered her to "hurry up, hurry up, or I am

Sentencing Guidelines themselves suggests that the applicability of the abduction enhancement hinges on anything more than movement against the victim's will. There is no authority for the proposition that abduction requires the additional element of violence. A plain reading of the Guidelines and the case law makes clear that forced movement alone suffices.

### 2. Application of Abduction Enhancement to Defendant

Here, Defendant or his accomplice forced one of the tellers into the bank. The video produced at trial[47] shows that one of the tellers fled from the bank upon observing one of the defendants approach. The teller then returned to this defendant and joined him at the bank door. As the video documents, after returning, the teller resisted entering the bank with the defendant. The video also shows that she entered the bank with that defendant after what appears to have been a struggle.

While it may seem unfair, as Defendant suggests, to impose the same enhancement given to perpetrators who beat their victims, as in *Hawkins,* or openly used a weapon to coerce movement, as in *Johnson*, the result here is dictated by the relevant authority. The authorities to which this Court looks—the Fifth Circuit, the Supreme Court, and the Sentencing Commission—indicate no need for an additional element beyond forced movement. Movement alone, in the absence of violence, suffices to support the enhancement under current law.

Moreover, under Fifth Circuit precedent, the distance traveled by the teller, from outside the bank to inside of it, is also sufficient to trigger the enhancement. This is clear from *Hickman*, in

---

going to hurt you." 619 F.3d at 470. In the robberies in question here, no party claims that either Defendant ever brandished a weapon and it is disputed whether there was a struggle. Moreover, the Government itself concedes that the Defendant specifically told the teller, "relax no one is going to get hurt." Rec. Doc. 184 at 5.

[47] *See United States v. Watts*, 519 U.S. 148 (approving district court's consideration of evidence adduced in trial for sentencing, even where evidence related to charges of which defendant was acquitted).

which the Circuit found the abduction enhancement applicable where workers were moved from the parking lot into the business—almost the identical situation—and *Johnson*, where victims were moved within the same building.

The Record, specifically the video surveillance, captures this very conduct by Defendant or his accomplice. One of them forced the teller from outside the bank to inside of it. It makes no difference—at least for application of the enhancement—that this defendant did so without first attacking the victim.

Defendant's argument that violence must accompany the movement is not supported by either the law of this Circuit or the text of the Sentencing Guidelines Manual. Therefore, Defendant's argument, although compelling, runs counter to the weight of authority. Accordingly, Defendant's objection cannot be sustained. Moreover, the Court finds that the Government has demonstrated by a preponderance of the evidence, the applicability of the enhancement to Defendant in this case.

## B. Dangerous Weapon Enhancement Under USSG Sec. 2B3.1(b)(2)(E)

### 1. Applicable Law

Pursuant to USSG Sec. 1B1.1, a dangerous weapon is defined as any object used in such a manner that it creates the impression that the object can cause death or serious bodily injury.[48] The Note to this Comment specifically provides the example of a defendant wrapping a hand in a towel during a bank robbery to create the appearance of a gun.[49] Given USSG Sec. 1B1.1, comment.

---

[48] USSG Sec. 1B1.1, comment. (n.1(D)(II)).

[49] *Id.*

(n.1(D)(II)), it is of no import whether the object, in fact, was a weapon. What controls is how the defendant uses the object, not the nature of the object.

## 2. Application of Dangerous Weapon Enhancement to Defendant

Video surveillance from the bank played at trial shows that as one of the tellers began to run from the bank, one of the defendants flashed what appears to be a concealed weapon. Still frames of the video, entered into the Record by the Government at sentencing, reveal a black object on this same defendant. While the image is grainy, the object appears to be a gun protruding from the defendant's waistband. Moreover, this black object only covers part of the defendant's waist, thus ruling out that this was simply a belt or waistband. While the black object could conceivably have been something other than a gun, the Court finds that it is more likely than not that the object was a handgun.

Ultimately, however, it does not matter if the black object was in fact a gun. The Government need only show by a preponderance of the evidence that this black object was used by the Defendant to create the appearance of a gun or other dangerous weapon.[50] Certainly, it is troubling that the Government, which chose not to charge Defendants with possession of a weapon in connection with this robbery, seeks an enhanced term of imprisonment for the very same conduct after trial when its burden of persuasion is lower. However, it is the Government's right to do so.[51]

---

[50] *See* USSG Sec. 6A1.3, p.s. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.").

[51] *See United States v. Watts*, 519 U.S. 148, 155 (1997) (noting Government can seek sentencing enhancements for conduct for which defendant was already acquitted at trial because "acquittal on criminal charges does not prove that a defendant is innocent, but merely proves the existence of a reasonable doubt as to guilt").

Applying the preponderance of the evidence standard,[52] the Court here finds that it is more likely than not that the teller came back to the backdoor of the bank after trying to runaway because Defendant or his accomplice lifted his clothing to reveal the black object, as suggested by the surveillance video. Further, it is more likely than not that this defendant lifted his shirt to intimidate the teller into returning for the purposes of letting him into the bank. Applying a preponderance of the evidence standard, the enhancement for use of a dangerous weapon is warranted given this video footage and still frames produced by the Government.

## V. Conclusion

For all the reasons stated above, the Court does not find merit to Defendant's objections when considered against the evidence put forth by the Government at trial and sentencing. Specifically, the Court finds that under the Sentencing Guidelines, abduction requires nothing more than forced movement, which is understood in this Circuit to mean movement as simple as being brought into a building from a spot outside of it. Additionally, applying a preponderance of the evidence standard, Defendant's objection to the dangerous weapons enhancement must also fail. The weight of the evidence indicates that Defendant or his accomplice created the impression that he had on him a dangerous weapon. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Objections are **OVERRULED**.

**NEW ORLEANS, LOUISIANA**, this  5th  day of February, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[52] USSG Sec. 6A1.3, p.s.