## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 12-141** |
| **MYRON SAUNDERS** | **SECTION: "G"** |

## ORDER AND REASONS

Before the Court is Defendant Myron Saunders' ("Saunders") motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] In the motion, Saunders contends that his medical conditions—combined with the elevated risk of contracting COVID-19 while in custody— constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[2] The government opposes the motion for compassionate release.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On March 23, 2012, Saunders was charged in a 6-count indictment with: conspiracy to commit bank robbery (Count 1); armed bank robbery on June 24, 2011 (Count 2); using and carrying a firearm during an armed bank robbery on June 24, 2011 (Count 3); bank robbery on November 5, 2011 (Count 4); attempted bank robbery on December 10, 2011 (Count 5); and

---

[1] Rec. Doc. 264.

[2] *Id.*

[3] Rec. Doc. 266.

attempted bank robbery on December 24, 2011 (Count 6).[4] A jury trial in this matter commenced on June 24, 2013.[5] After a six day trial, the jury found Saunders guilty of Counts 1, 2, 3, 4, and 6, and acquitted him on Count 5.[6]

On July 15, 2013, Saunders filed a "Motion for a New Trial,"[7] which the Court denied on November 13, 2013.[8] On January 30, 2014, the Court sentenced Saunders to a term of 60 months imprisonment as to Count 1, 168 months imprisonment as to Count 2 to run concurrently, 60 months imprisonment as to Count 3 to run consecutively, 168 months imprisonment at to Count 4 to run concurrently, and 168 months imprisonment as to Count 6 to run concurrently, for a total term of 228 months imprisonment.[9] Saunders filed a timely Notice of Appeal.[10] On April 13, 2015, the United States Fifth Circuit Court of Appeals affirmed Saunders' conviction and sentence.[11] BOP records reflect that Saunders is currently housed at Federal Correctional Institution Oakdale I.[12] His projected release date is June 23, 2028.[13]

On December 21, 2021, Saunders filed the instant *pro se* motion for compassionate release

---

[4] Rec. Doc. 8.

[5] Rec. Doc. 124.

[6] Rec. Doc. 134-3.

[7] Rec. Doc. 140.

[8] Rec. Doc. 181.

[9] Rec. Doc. 193 at 2.

[10] Rec. Doc. 198.

[11] Rec. Doc. 219.

[12] Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 24, 2022).

[13] *Id.*

pursuant to Section 3582(c)(1)(A).[14] On January 13, 2022, the government filed an opposition to the motion for compassionate release.[15]

## II. Parties' Arguments

### A.    *Saunders' Arguments in Support of the Motion*

Saunders asserts that he has a body mass index ("BMI") of over 34.[16] Saunders contends that his BMI—combined with the risks of contracting COVID-19 while incarcerated—constitute sufficient grounds for a sentence reduction.[17] Saunders asserts that he exhausted his administrative remedies by filing a request for compassionate release with the warden of his facility on October 31, 2021, which was denied by the warden on November 19, 2021.[18]

Saunders contends that his circumstances are extraordinary and compelling to warrant compassionate release under Section 3582(c)(1)(A).[19] Saunders notes that the Omicron variant is spreading quickly, and "some fully vaccinated people will still be hospitalized and die" from the variant.[20] He also asserts that a sentence of time-served would resolve a sentencing disparity between Saunders and his co-defendant, Lamar Nero, who was sentenced to 180 months imprisonment.[21] Saunders argues that a sentence of time served would accomplish the goals of

---

[14] Rec. Doc. 264.

[15] Rec. Doc. 266.

[16] Rec. Doc. 264 at 2.

[17] *Id.*

[18] *Id.* (citing Rec. Doc. 264-1; Rec. Doc. 264-2).

[19] *Id.* at 2–5.

[20] *Id.* at 3.

[21] *Id.* at 5–6.

sentencing set forth at 18 U.S.C. § 3553(a)(2).[22] Finally, Saunders asserts that he would not be a

danger to the community if released.[23] He states that he would reside with his father in Hammond,

Louisiana, and work for Mobile Auto Spa in New Orleans, Louisiana.[24]

**B.    The Government's Arguments in Opposition to the Motion**

As an initial matter, the government concedes that Saunders has satisfied the administrative

exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).[25] Nevertheless, the government

asserts that the motion for compassionate release should be denied for two reasons.

First, the government contends that Saunders has failed to present any "extraordinary and

compelling reasons" warranting a reduction under Section 3582(c)(1)(A).[26] The government

asserts that Saunders' medical records reveal that he received two doses of the Pfizer vaccine in

August 2021.[27] The government contends that Saunders' vaccination status "precludes eligibility

for compassionate release based on COVID-19."[28] Additionally, the government notes that

Saunders has been regularly tested for COVID-19.[29] Therefore, the government argues that

Saunders "has not established that [the] BOP is unable to manage an outbreak within his

correctional facility or that the facility is specifically unable to treat him if he were to contract the

---

[22] *Id.* at 6–7.

[23] *Id.*

[24] *Id.* at 7.

[25] Rec. Doc. 266 at 2.

[26] *Id.* at 4–10.

[27] *Id.* at 2 (citing Rec. Doc. 266-1 at 81).

[28] *Id.* (citing *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021)).

[29] *Id.* at 10.

virus and develop COVID-19 symptoms."[30]

Second, the government argues that the Section 3553(a) factors disfavor a sentence reduction.[31] The government asserts that the nature and circumstances of the offense demonstrate that Saunders is a danger to the community.[32] Considering the violent nature of the offenses, the government argues that the totality of the circumstances weigh against granting the instant motion.[33]

### III. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed."[34] Federal law provides three exceptions:

(1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A);[35]

(2) "to the extent expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure";[36] or

(3) when the defendant was sentenced based on a retroactively lowered sentencing range.[37]

Saunders moves the Court to reduce his sentence under Section 3582(c)(1)(A).[38] Motions to reduce a sentence under Section 3582(c)(1)(A) are often referred to as "compassionate release"

---

[30] *Id.*

[31] *Id.* at 10–13.

[32] *Id.* at 11.

[33] *Id.* at 12.

[34] 18 U.S.C. § 3582(c)(1)(A).

[35] *Id.*

[36] *Id.* § 3582(c)(1)(B).

[37] *Id.* § 3582(c)(2).

[38] Rec. Docs. 83, 93.

motions.[39] Prior to 2018, only the Director of the BOP could file a compassionate release motion under Section 3582(c)(1)(A).[40] In 2018, Congress passed, and the President signed into law, the First Step Act.[41] That Act amended the process to file compassionate release motions by permitting prisoners to file such motions directly with a court.[42]

Yet, before filing a compassionate release motion directly with a court, a prisoner must exhaust the administrative requirements under Section 3582(c)(1)(A).[43] Indeed, under 3582(c)(1)(A), a defendant may personally move the Court to reduce his or her sentence after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of [a request to the Bureau of Prisons to bring a motion on the defendant's behalf] by the warden of the defendant's facility," whichever is earlier.

Once Section 3582(c)(1)(A)'s exhaustion requirement is satisfied, a court may reduce a prisoner's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[44] Finally, the Court must "also consider[] the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable."[45]

---

[39] *See, e.g.*, *United States v. Reeves*, No. 18-294, 2020 WL 1816496, at *1 (W.D. La. Apr. 9, 2020).

[40] *Id.*

[41] *See id.*

[42] *See id.*

[43] *See* 18 U.S.C. § 3582(c)(1)(A).

[44] *Id.*

[45] *Id.*

## IV. Analysis

In the instant motion, Saunders argues that his BMI—combined with his elevated risk of contracting COVID-19 while incarcerated—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[46]

### A.    Whether Saunders Has Exhausted Administrative Remedies

A defendant must exhaust administrative remedies before filing a motion in the district court seeking compassionate release pursuant to Section 3582(c)(1)(A).[47] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[48] the exhaustion requirement is satisfied, and the Court may consider a motion for compassionate release filed by the defendant. The Fifth Circuit has held that the exhaustion requirement is not jurisdictional, but it is a mandatory claim-processing rule.[49] Because the administrative exhaustion requirement is a claim-processing rule, it must be enforced unless it is waived by the government.[50]

In this case, Saunders argues that he exhausted his administrative remedies by filing a request for compassionate release with the warden of his facility on October 31, 2021, which was denied by the warden on November 19, 2021.[51]   The government does not dispute that the

---

[46] Rec. Doc. 264.

[47] *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) ("The statute's requirement that a defendant file a request with the BOP before filing a motion in federal court is a [mandatory] nonjurisdictional claim-processing rule."); 28 U.S.C. § 3582(c)(1)(A).

[48] *Franco*, 973 F.3d at 468.

[49] *Id.*

[50] *See United States v. Rivas*, No. 20-10360, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule since the Government did not waive the exhaustion issue on appeal.").

[51] Rec. Doc. 264 at 2 (citing Rec. Doc. 264-1; Rec. Doc. 264-2).

exhaustion requirements of Section 3582(c)(1)(A) are satisfied.[52] Therefore, the Court may evaluate Saunders' request for compassionate release on the merits.[53]

**B.      *Whether Extraordinary and Compelling Reasons Warrant a Sentence Reduction***

Pursuant to 28 U.S.C. § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the United States Sentencing Guidelines is the applicable policy statement. Application Note 1 to Section 1B1.13 defines the term "extraordinary and compelling reasons" to include the following situations: (1) the defendant is suffering from a terminal illness ("Subsection A1"); (2) the defendant is suffering from a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" ("Subsection A2"); (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less ("Subsection B"); (4) the death or incapacitation of the caregiver of the defendant's minor child or minor children ("Subsection C1"); (5) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner ("Subsection C2"); or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described" in the proceeding subsections

---

[52] Rec. Doc. 266 at 2.

[53] *See Franco*, 973 F.3d at 468 (recognizing that a district court must enforce the mandatory claim-processing rule where it is raised by the government). Here, the government does not raise the claim-processing rule.

("Subsection D").[54]

In the instant case, Saunders is not suffering from a terminal illness, and he is not yet 65 years old. Additionally, Saunders does not argue that any family circumstances might warrant a reduction of his sentence under Subsection C. Accordingly, Subsections A, B, and C of the Application Note do not apply. Instead, Saunders argues that his case falls within Subsection D.

Subsection D requires a finding of extraordinary and compelling reasons to justify a reduction of sentence. The Sentencing Guidelines were last amended on November 1, 2018, and therefore the policy statement has not been updated since the enactment of the First Step Act on December 21, 2018.[55] Before the enactment of the First Step Act, only the Bureau of Prisons could move for compassionate release under Section 3582. The First Step Act amended Section 3582(c) to allow a defendant to bring a motion for compassionate release "if he has exhausted his administrative rights to appeal the BOP's failure to bring such a motion or has waited 30 days after the warden's receipt of the request, whichever is earlier."[56]

In light of the First Step Act, there has been disagreement over whether courts may determine what constitutes an extraordinary and compelling reason under the catchall provision in Subsection D.[57] Recent Fifth Circuit caselaw instructs that reference to the Guidelines is one step in the district court's own determination of whether extraordinary and compelling reasons warrant a reduction of sentence.[58] The Guidelines are not "the dispositive boundary of what may be

---

[54] U.S.S.G. § 1B1.13 cmt. n.1 (2018).

[55] *See United States v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020).

[56] *United States v. Bell*, No. 20-10427, 2020 WL 5823316, at *1 (5th Cir. Sept. 30, 2020).

[57] *United States v. Lawrence*, No. 13-42, 2020 WL 5411778, at *3–4 (E.D. La. Sept. 9, 2020) (collecting cases).

[58] *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020).

judicially determined to be extraordinary and compelling reasons for a sentence reduction for medical reasons."[59] Accordingly, "the decision of whether to ultimately grant a modification is left to the sound discretion of the trial court," and such decisions are reviewed on appeal for abuse of discretion.[60]

In the motion, Saunders contends that his BMI—combined with the elevated risk of contracting COVID-19 while in custody—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[61] The BOP medical records submitted by the government show that Saunders has a BMI of 34.6,[62] placing him in the obese range.[63] The CDC has stated that people with obesity are at an increased risk of severe illness from COVID-19.[64] "Since the pandemic began, dozens of studies have reported that many of the sickest COVID-19 patients have been people with obesity."[65] More recent studies "demonstrated that even people who are merely overweight are at higher risk."[66] The largest descriptive study of hospitalized COVID-19 patients in the United States "found that 77% of nearly 17,000 patients hospitalized with COVID-19 were

---

[59] *Id.*

[60] *Id.* (quoting *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011)).

[61] Rec. Doc. 264.

[62] Rec. Doc. 266-1 at 42.

[63] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 23, 2022).

[64] *Id.*

[65] Meredith Wadman, *Why COVID-19 Is More Deadly in People With Obesity—Even if They're Young*, Science (Sept. 8, 2020), https://www.sciencemag.org/news/2020/09/why-covid-19-more-deadly-people-obesity-even-if-theyre-young (last visited Jan. 23, 2022).

[66] *Id.*

overweight (29%) or obese (48%)."[67]

Considering the foregoing, Saunders' BMI makes him particularly vulnerable to severe illness from COVID-19 so as to warrant a finding of "extraordinary and compelling" circumstances to justify a reduction of sentence. However, the medical records submitted by the government show that the BOP administered two doses of the Pfizer vaccine to Saunders in August 2021.[68] Saunders notes that the Omicron variant is spreading quickly, and "some fully vaccinated people will still be hospitalized and die" from the variant.[69] Although the Court is sympathetic to these concerns, the CDC has stated that "COVID-19 vaccines are highly effective at preventing severe illness, hospitalizations, and death" from the Omicron variant.[70] Additionally, the BOP medical records show that Saunders has been regularly tested for COVID-19.[71] Considering Saunders' vaccine status and the regular COVID-19 testing he has received from the BOP, Saunders has not established that the BOP is unable to manage an outbreak within FCI Oakdale or that the facility is specifically unable to treat him if he were to contract the virus and develop COVID-19 symptoms. Although Saunders has a BMI of 34.6, he has not shown that compassionate release is warranted based on this factor alone. Therefore, the Court concludes that Saunders has not established extraordinary and compelling reasons for a reduction in sentence.

---

[67] *Id.*

[68] Rec. Doc. 266-1 at 81.

[69] Rec. Doc. 264 at 3.

[70] Centers for Disease Control and Prevention, *Omicron Variant: What You Need to Know*, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Jan. 23, 2022).

[71] Rec. Doc. 266-1 at 1, 30, 36, 101, 104.

**C.**     ***Whether the Section 3553(a) Factors Weigh in Favor of Reducing Saunders' Sentence***

If "extraordinary and compelling" circumstances warrant a reduction in sentence, the Sentencing Guidelines' policy statement regarding compassionate release states that a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)."[72] Saunders argues that his release is supported by the Section 3553(a) factors, and he does not pose a danger to any person or to society if released.[73] The government argues that the Section 3553(a) factors disfavor a sentence reduction.[74] The government asserts that the nature and circumstances of the offense demonstrate that Saunders is a danger to the community.[75] Even assuming that extraordinary and compelling circumstances warrant a reduction in sentence, for the reasons that follow, Saunders has not shown that he is not a danger to the community or that the Section 3553(a) factors favor his release.

Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors related to whether a petitioner is a danger to the community include: "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's

---

[72] U.S.S.G. § 1B1.13 cmt. n.1 (2018).

[73] Rec. Doc. 264.

[74] Rec. Doc. 266 at 10–13.

[75] *Id.* at 11.

12

release."[76] Section 3553(a), which sets forth the factors to consider in initially imposing a sentence,

requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of
> the defendant; [and]
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law,
> > and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training,
> > medical care, or other correctional treatment in the most effective manner[.][77]

On January 30, 2014, Saunders appeared before the Court for sentencing after being found

guilty of conspiracy to commit bank robbery, armed bank robbery, use of a firearm during and in

relation to a crime of violence, bank robbery, and attempted bank robbery.[78] The Court sentenced

Saunders to a term of 60 months imprisonment as to Count 1, 168 months imprisonment as to

Count 2 to run concurrently, 60 months imprisonment as to Count 3 to run consecutively, 168

months imprisonment at to Count 4 to run concurrently, and 168 months imprisonment as to Count

6 to run concurrently, for a total term of 228 months imprisonment.[79]

Saunders is a 43-year-old, African American male.[80] The instant offense represented

Saunders' third criminal conviction.[81] He was raised by his parents and did not report and problems

of abuse or neglect.[82] His prior convictions were for attempted theft and theft of goods under

---

[76] 18 U.S.C. § 3142(g).

[77] 18 U.S.C. § 3553(a).

[78] Rec. Doc. 193.

[79] *Id.* at 2.

[80] Rec. Doc. 175 at 4.

[81] *Id.* at 15.

[82] *Id.* at 17.

$300.[83] He has a history of viable employment as a car salesman, but he was unemployed at the time of the instant offense.[84]

In the instant offense, Saunders and his accomplices robbed Chase Bank of $141,640 and Fidelity Homestead bank of $59,350.[85] A firearm was used in at least one of the robberies. Additionally, while fleeing from law enforcement officials another accomplice fell from the getaway vehicle and died.[86] Considering these factors at sentencing, the Court imposed a sentence at the bottom of the Guideline range applicable to the instant offense.

Saunders asserts that a sentence of time-served would resolve a sentencing disparity between Saunders and his co-defendant, Lamar Nero, who was sentenced to 180 months imprisonment.[87] The Court imposed a downward variance in co-defendant Nero's case. One factor the Court considered in imposing the downward variance was the fact that Nero was only 21 years old when these offenses occurred. At sentencing, the Court applied the relevant Section 3553(a) factors and found that a downward variance was warranted for co-defendant Nero. This same factor did not apply to Saunders, who was 33 years old at the time of the instant offenses. Moreover, BOP records reflect that Nero's projected release date is not until February 8, 2025.[88] Releasing Saunders at this time would result in him serving a lesser sentence than his co-defendant. This would result in an unwarranted sentencing disparity, which is what Section 3553(a) attempts to

---

[83] *Id.*

[84] *Id.* at 2.

[85] *Id.* at 6–8.

[86] *Id.* at 8.

[87] Rec. Doc. 264 at 5–6.

[88] Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 24, 2022).

prevent.[89] Moreover, although the Court is sympathetic to Saunders' COVID-19 concerns, the risks Saunders faces if potentially exposed to COVID-19 are being addressed by the Bureau of Prisons. Therefore, the Court finds that the relevant factors under Section 3142(g) and Section 3553(a) weigh against release.

### V. Conclusion

The BOP administered two doses of the Pfizer vaccine to Saunders in August 2021.[90] Considering Saunders' vaccine status and the regular COVID-19 testing he has received from the BOP, Saunders has not established that the BOP is unable to manage an outbreak within FCI Oakdale or that the facility is specifically unable to treat him if he were to contract the virus and develop COVID-19 symptoms. Although Saunders has a BMI of 34.6, he has not shown that compassionate release is warranted based on this factor alone. Therefore, the Court concludes that Saunders has not established extraordinary and compelling reasons for a reduction in sentence. Additionally, the Court finds that the requested reduction is inconsistent with the Section 3553(a) factors and Saunders would pose a danger to society if released. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Myron Saunders' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)[91] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 26th day of January, 2022.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[89] *See United States v. Reed*, No. 15-100, 2020 WL 2850145, at *4 (E.D. La. June 2, 2020) (Fallon, J.) (citing 18 U.S.C. § 3553(a)(6)).

[90] Rec. Doc. 266-1 at 81.

[91] Rec. Doc. 264.